Joseph M. KINKELLA, Plaintiff and Appellant,

v.

H.L. (Jim) BAUGH and Dan Baugh, Defendants and Respondents.

No. 17967.

Supreme Court of Utah.

March 7, 1983.

W. Scott Barrett, Logan, for plaintiff and appellant.

N. George Daines, Logan, for defendants and respondents.

STEWART, Justice:

This is an action for damages on a cost plus 10 percent contract for the remodeling of a home. Plaintiff contended at trial that defendants had inflated their costs and that they were not entitled to rely on the contract because they were not licensed as general contractors. The trial court ruled that the evidence did not support plaintiff's allegations and held for defendants. We affirm.

Pursuant to a contract between plaintiff Joseph Kinkella and defendant Jim Baugh, Baugh agreed to act as general contractor for an extensive remodeling of plaintiff's residence. Plaintiff knew at the signing that Jim Baugh did not have a contractor's license, but both parties agreed that Jim Baugh's son Dan, whose possession of a contractor's license was disputed at trial by plaintiff, would represent Jim in supervising the details of the construction. The parties agreed that Jim Baugh's compensation would be computed at 10 percent of the costs of the construction; they did not, however, specify the manner in which he was to be paid his compensation. The usual practice of the parties was for the plaintiff to make periodic advance payments to Jim Baugh to cover costs, and Jim would retain 10 percent of each payment. By that method Jim received approximately $9,000 of his compensation. On a few occasions he had the subcontractors add 10 percent to their invoices for the cost of materials and labor. When the invoices were paid by plaintiff, Jim would either retain 10 percent prior to remitting the proper sum to the subcontrac-

tor or receive that amount back from the subcontractor. Jim received approximately $3,400 by first adding his 10 percent to subcontractor invoices.

The construction went generally as planned, but with some disputes along the way. The total cost of the construction, excluding Jim Baugh's compensation, was approximately $135,000. Compensation received by Jim Baugh totalled $12,400, just under 10 percent of total costs.

Plaintiff alleged at trial that defendants breached the contract by (1) overcharging him approximately $10,000 for labor and $9,000 for materials; and (2) by taking $3,400 in "secret kickbacks," referring to the compensation Jim Baugh received through the subcontractors' invoices. Plaintiff also argued that neither defendants' records nor a post-construction audit supported defendants' cost figures, that defendants should not be allowed to enforce the contract because they were unlicensed, and that defendants' compensation, if any, should be limited to $9,000.

Following a nonjury trial and submission of detailed audits by both parties, the trial court found (1) that although neither party had kept good records, the evidence adduced tended to support defendants' cost figures; and (2) that the $3,400 deducted from payments to subcontractors was properly retained by Jim Baugh as part of the compensation owed him. The trial court made no finding as to whether either of the defendants possessed a license at the time of the construction. On these findings the trial court held for defendants.

On appeal, plaintiff contends that (1) the findings of fact and conclusions of law were improperly adopted because the trial court did not afford plaintiff an opportunity to object to them; (2) the findings of fact are contrary to the evidence and no finding was made as to whether either defendant was licensed; (3) the defendants cannot enforce the contract because they are unlicensed; (4) defendants' retention of the $3,400 constituted an improper award of affirmative relief not based on a counterclaim; and (5) the burden of keeping records of the cost of labor and materials was improperly placed on plaintiff rather than on defendants. We address those allegations in that same order.

■ Rule 2.9(b), Rules of Practice in the District and Circuit Courts, requires that copies of proposed findings of fact and conclusions of law be served on opposing counsel before being presented to the court for signature. The requirement of service on the losing counsel is for the purpose of permitting him to make objections and propose amendments. In the present case, the trial court signed the findings and conclusions prepared by defendants on the same day that plaintiff received his copy, thereby precluding plaintiff from responding before they were signed. However, within a few days plaintiff submitted objections, and the trial court, after reviewing them, allowed the findings and conclusions to stand as originally signed. Despite the failure of defendants to comply with the rule, we think the trial court must be deemed to have considered the objections and to have rejected them. On the facts of this case, there was substantial compliance with Rule 2.9(b).

■ Plaintiff argues that he presented irrefutable evidence that defendants inflated the labor and material costs. Plaintiff also claims that the trial court attached insufficient weight to the testimony of plaintiff's expert. The trial court heard the witnesses of both parties first-hand, evaluated detailed written audits by both sides, and concluded that plaintiff's evidence was not as convincing as defendants' evidence. On appeal we do not retry the facts and will not overturn the trial court's findings of fact if they are supported by substantial evidence. *E.g., Piacitelli v. Southern Utah State College,* Utah, 636 P.2d 1063, 1067 (1981). The evidence adequately supports the findings.

■ Plaintiff also contends that the court erred in failing to make a finding as to whether the defendants were licensed contractors. The claim is that one not licensed as a contractor may not recover on a

construction contract. Under Rule 52(a), Utah R.Civ.P., the trial court in a non-jury case must find the facts specially. It is well settled that the trial court should make findings on all material issues tried by the parties, and a failure to do so is generally considered a reversible error and requires a remand. *E.g., Romrell v. Zions First National Bank, N.A.,* Utah, 611 P.2d 392 (1980); *Boyer Co. v. Lignell,* Utah, 567 P.2d 1112 (1977). Since licensure might have affected the rights of a contractor to rely on the contract, *see, e.g., Motivated Management International v. Finney,* Utah, 604 P.2d 467 (1979); *Lignell v. Berg,* Utah, 593 P.2d 800 (1979), a finding on that issue should have been made. Nevertheless, the court's failure to do so in this case was not reversible error because the facts in the record as to licensure are clear, uncontroverted, and capable of supporting only a finding in favor of the judgment. Therefore, the failure of the trial court to make that finding is harmless error. *See Duncan v. Hemmelwright,* 112 Utah 262, 186 P.2d 965 (1947); *Dahl v. Cayias,* 110 Utah 398, 174 P.2d 430 (1946); *St. George & Washington Canal Co. v. Hurricane Canal Co.,* 93 Utah 262, 72 P.2d 642 (1937); *Piper v. Eakle,* 78 Utah 342, 2 P.2d 909 (1931); 5B C.J.S. *Appeal and Error* § 1790 (1958).

In this case the evidence is clear and uncontroverted that at the time of the 1979 construction Jim Baugh was not licensed while his son Dan Baugh was. Although plaintiff challenged Dan's possession of a license by attempting to create confusion over the precise date on which his license was issued, Dan Baugh testified that he possessed a Utah contractor's license throughout the time of the construction. No one else testified on that point. Because the evidence is clear and uncontroverted and the issue could not possibly be found in plaintiff's favor, plaintiff was not prejudiced by the court's failure to make a finding on the issue.

Because Dan Baugh was a licensed contractor and supervised the project by agreement of plaintiff and Jim Baugh, plaintiff received whatever protection is afforded by compliance with the licensing statute. U.C.A., 1953, §§ 58A–1–1, –26 (1981 Supp.). In sum, we conclude that defendants were entitled to the contract price for their services. *Motivated Management International v. Finney,* Utah, 604 P.2d 467 (1979); *Lignell v. Berg,* Utah, 593 P.2d 800 (1979).

Plaintiff characterizes the court's ruling that defendants were entitled to retain the $3,400 as an award of affirmative relief, thus invalid because not based on a counterclaim. The court made no affirmative award to defendants; they had already received that sum as part of their compensation long before trial. It was plaintiff who sought a judgment for $3,400 against defendants as excessive compensation. Even though the trial court did not sustain the plaintiff's position, the court did not award affirmative relief to defendants.

Plaintiff also contends that the trial court erroneously placed the burden of proper record keeping on the plaintiff. The trial court stated that "neither party kept good records." It is on that basis that plaintiff rests its contention. We think the contention is without substance. The trial court considered the records of both parties, in conjunction with all evidence offered, in making its decision. The only burden on plaintiff was that of proving defendants breached the contract; and that burden plaintiff failed to carry.

Affirmed. Costs to respondents.

HALL, C.J., and OAKS, HOWE and DURHAM, JJ., concur.