505 P.2d 295

**Pearl Ann HOLDAWAY, Plaintiff and Respondent,**

v.

**Roger Vernon HALL, Defendant and Appellant.**

**No. 12836.**

Supreme Court of Utah.

Jan. 16, 1973.

---

**2.** Pinion v. Pinion, 92 Utah 255, 67 P.2d 265, Section 30–3–5 U.C.A.1953.

Sumner J. Hatch, of Hatch, McRae & Richardson, Salt Lake City, for appellant.

George H. Searle, Salt Lake City, for respondent.

ELLETT, Justice:

The defendant appeals from a judgment based on a jury verdict which awarded plaintiff $7,000 general damages, $3,683.50 special damages, and $5,000 punitive damages.[1]

The evidence given at trial would justify a finding that plaintiff and defendant had been keeping company with each other and were bowling partners; that defendant came to plaintiff's home to transport her to a bowling match; that while she was getting ready to go, he snooped and read a letter which she had written to another man; that plaintiff made known to defendant that she was through with him; that he forced her to go to the bowling alley; that she sneaked away from him and came home with her sister and brother-in-law; that she barricaded the doors to her house, turned out the lights, and awaited the sequence of events which she correctly anticipated would occur; that about 1:15 a. m. the defendant came to her home, broke open the door, entered, and grabbed her hand and bent it backward, inflicting the injury of which she complains.

The plaintiff's finger was permanently injured and deformed, so that she cannot type or play the organ. She testified that she was earning $120 per week prior to the injury and since then has only been able

1. The verdict called for $10,000 punitive damages, but on defendant's motion for a new trial the trial judge reduced this amount to $5,000.

to secure work which pays her $1.15 per hour. She also testified that she could type 90 words per minute prior to the injury.

The plastic surgeon who operated on the finger in an effort to correct the damage testified that future operations by two doctors in San Francisco, California, might improve the condition but in his opinion the operations would not entirely correct it.

■ The defendant claims that the award of damages was excessive.

We think that the award of $7,000 as general damages was entirely proper. The appellant claims the special damages awarded exceeded the amount plaintiff proved. The evidence showed expenses relating to cost of treatment to her finger of $539.95. It also showed damage to a screen door of $10, damage to the front door of $75, and damage to her clothing in the amount of $30. This gives a total of $654.95.

Loss of earning capacity is classed under special damages, since it is a damage which does not necessarily flow from an injury. This item of special damage was not specially claimed in the complaint, but was proved at a contested trial, and under Rule 15(b), U.R.C.P., the pleadings are deemed amended to conform to the proof. In addition to this, the plaintiff in her complaint asked for special damages in the amount of $3,683.50, and no request for clarification was made by the defendant, nor was any objection made thereto prior to trial.

The cost of a future operation in San Francisco would also be an item of special damages, and altogether it would seem that the special damages awarded are justified by the evidence.

As to the punitive damages, the trial court reduced the award of $10,000 in the jury verdict to $5,000, which figure he determined to be sufficient and not excessive.

■ While the general law is to the effect that punitive damages should ordinarily bear some reasonable relation to the actual damages sustained,[2] there is a further element which may affect the amount to be awarded. That element is the conduct of the offending party.[3] Here the conduct of the defendant in breaking into the plaintiff's home in the dead hours of night and intentionally injuring her was such an outrage as to justify a substantial amount by way of punitve damages to be assessed as a lesson to the defendant and a warning to others not to conduct themselves in a like manner.

Other jurisdictions have permitted large awards of punitive damages, examples of

2. Falkenberg v. Neff, 72 Utah 258, 269 P. 1008 (1928).

3. Ostertag v. LaMont, 9 Utah 2d 130, 339 P.2d 1022 (1959).

which are: Livesey v. Stock, 208 Cal. 315, 281 P. 70 (1929), where actual damages were $750, punitive damages $50,000 reduced to $33,333.33, where the defendant shot plaintiff with birdshot at 50 yards. The appellate court ordered the punitive damages reduced to $10,000, or upon failure of plaintiff to accept that, to have a new trial. Pelton v. Gen. Motors Acc. Corp., 139 Or. 198, 7 P.2d 263 (Rehearing denied 9 P.2d 128), (1932), where mortgagee seized automobile when no payments were due. Compensatory damage of $255 and punitive damages of $5,000 were awarded. The Oregon Supreme Court said that in view of the wealth of the defendant, they could not say the jury erred in thinking such an amount was necessary as a deterrent to the defendant.

In the instant case the compensatory damage amounted to $10,683.50, and we cannot say that the trial judge abused his discretion is not further reducing the amount of punitive damages.

The appellant makes other assignments of error which we have considered and find to be without merit.

The judgment is affirmed with costs awarded to the respondent.

CALLISTER, C. J., and HENRIOD, CROCKETT, and TUCKETT, JJ., concur.